UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANET POOLE LITTLE,                          Case No. 13-13558

          Plaintiff,                     Denise Page Hood
v.                                           United States District Judge

SOCIAL SECURITY, COMMISSIONER OF             Michael Hluchaniuk
                                             United States Magistrate Judge
          Defendants.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 8, 10)**

## I.   PROCEDURAL HISTORY

    A.   <u>Proceedings in this Court</u>

On August 19, 2013, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Denise Page Hood referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability, disability insurance, and supplemental security income benefits.  (Dkt. 2).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 8, 10).

    B.   <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on December 13, 2010, alleging that her

disability began on May 14, 2009.  (Dkt. 6-2, Pg ID 48).  The claim was initially

disapproved by the Commissioner on May 12, 2011.  (Dkt. 6-2, Pg ID 48).

Plaintiff requested a hearing and on February 27, 2012, plaintiff appeared with

counsel before Administrative Law Judge (ALJ) Regina Sobrino, who considered

the case *de novo*.  In a decision dated March 27, 2012, the ALJ found that plaintiff

was not disabled.  (Dkt. 6-2, Pg ID 48-55).  Plaintiff requested a review of this

decision on April 16, 2012.  (Dkt. 6-2, Pg ID 44).  The ALJ's decision became the

final decision of the Commissioner when, after the review of additional exhibits,[1]

the Appeals Council, on June 19, 2013, denied plaintiff's request for review.

(Dkt. 6-2, Pg ID 26-32); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th

Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, that the findings of the Commissioner be

**REVERSED**, and that this matter be **REMANDED** under sentence four.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 45 years of age on the alleged disability onset date.  (Dkt. 6-2, Pg ID 54).  Plaintiff has past relevant work history as a licensed practical nurse and a registered nurse.  (Dkt. 6-2, Pg ID 54).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Dkt. 6-2, Pg ID 50).  At step two, the ALJ found that plaintiff's degenerative joint disease, degenerative disc disease, carpal tunnel syndrome, and fibromyalgia were "severe" within the meaning of the second step.  *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 6-2, Pg ID 50-51).  At step four, the ALJ found plaintiff could perform sedentary work as follows: she can lift, carry, push and pull a maximum of two pounds frequently and 10 pounds occasionally, using both hands; she could occasionally climb stairs and stoop; no climbing of ladders, kneeling, crouching, or crawling; frequent handling, fingering, and feeling; no reaching above shoulder level and no more than frequent reaching in other directions; no overhead activity; should be able to stand or sit at will; no exposure to hazards or vibration; no driving as a work duty; and no use of power, impact, vibrating or torquing tools.  (Dkt. 6-2, Pg ID 51).  At step five, the ALJ denied

plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  (Dkt. 6-2, Pg ID 54-55).

      B.    <u>Plaintiff's Claims of Error</u>

Plaintiff contends that the ALJ erred as a matter of law in failing to properly evaluate the medical records and opinion evidence, and therefore, formed an inaccurate hypothetical question to the vocational expert, which did not accurately reflect plaintiff's impairments.  Plaintiff also contends that the ALJ did not properly consider the medical source opinions.  Here, it is documented that plaintiff has degenerative disc disease, degenerative joint disease, carpal tunnel syndrome, and fibromyalgia, yet the ALJ found claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  (Tr. 25).  She noted the vocational expert's testimony, that given all of the factors, the claimant would be able to perform certain jobs such as an office clerk, reception/information clerk, assembler, and inspector.  (Tr. 30)  According to plaintiff, this determination is erroneous.  Plaintiff testified at the hearing that she was able to stand for 30 minutes before she had to sit (Tr. 39); she can walk for only 15 minutes before she has to sit (Tr. 39); she can sit for 20 minutes before she has to stand (Tr. 40); she is limited in her ability to lift to 5 pounds (Tr. 40); and she has trouble grasping, reaching, bending, crouching, and has numbness and tingling in both legs.  (Tr. 40, 49).  As a result, plaintiff says she

cannot perform the necessities of everyday life.  She also claims that she has to elevate her legs to at least waist level.  (Tr. 50).  According to plaintiff, the ALJ's finding that she was capable of performing the positions of reception/information clerk, office clerk, assembler, and inspector when she is not able to use her upper extremities regularly and is limited in her ability to sit, stand, and walk is not substantiated.

Even the ALJ indicated that the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" yet plaintiff was deemed not credible.  (Tr. 28).  According to plaintiff, her limitations effectively preclude her from performing any work, including the listed representative occupations, and the reasoning to support her lack of credibility is not substantiated.  Moreover, plaintiff argues that the hypothetical question asked of the VE, which included claimant's education and work experience with her being able of performing a range of sedentary work with additional limitations, was improper.  (Tr. 26).  Plaintiff contends that she cannot engage in any lifting over 5 pounds, suffers from extreme pain if she over uses it, which, based on common sense, would preclude her from being able to effectively perform the requisites of being a reception/information clerk, office clerk, assembler, and inspector because they each entail handling and receiving items.  Further, work as a small products assembler would certainly require the use of her arms in order to

Report and Recommendation
Cross-Motions for Summary Judgment
*Poole-Little v. Comm'r*; Case No. 13-13558

effectively handle clerk positions.  Therefore, plaintiff maintains that the hypothetical is improper.

    C.    <u>The Commissioner's Motion for Summary Judgment</u>

According to the Commissioner, the ALJ met her burden at step five of the sequential analysis that plaintiff could perform jobs that existed in significant numbers in the local economy.  The ALJ relied on a number of opinions when she found plaintiff not disabled.  The ALJ referred to the consultative examination done by Dr. Ray and observed that Dr. Ray found only one functional restriction, limited lifting with plaintiff's right shoulder.  (Tr. 28, 324).  The ALJ also observed that plaintiff's treating surgeon, Dr. Ciullo, released her to do paperwork and chart work as early as May 26, 2009, or approximately two weeks after he operated on plaintiff's right shoulder.  (Tr. 196).

According to the Commissioner, the ALJ also set out good reasons for finding plaintiff not credible.  For example, the ALJ noted that despite plaintiff's testimony about a need to elevate her legs above heart level (Tr. 50), no medical source of record supported that alleged need.  (Tr. 28).  Plaintiff does not challenge or even address any of these findings.  Instead, plaintiff argues that the ALJ's step five determination is flawed because each element of the hypothetical question did not accurately describe her in all significant relevant respects.  The Commissioner contends that this challenge is not persuasive because plaintiff has

not explained which elements are missing from the ALJ's hypothetical questions.

Indeed, after asserting that the ALJ did not properly evaluate her impairments, the Commissioner maintains that plaintiff's brief does not set out any of the factors in the hypothetical question, but instead includes a block quotation that concerns the weight that the agency assigns to treating source opinions. This reference is, at minimum, misplaced because nowhere in her brief does plaintiff identify any specific physician by name. According to the Commissioner, such an omission is particularly significant because at the hearing, plaintiff identified Dr. Awerbach as a treating specialist (Tr. 43), and Dr. Imperial as her primary care physician. (Tr. 44). Plaintiff, however, does not mention either doctor in her brief. Therefore, the Commissioner contends that plaintiff has not effectively challenged the ALJ's decision. She has ignored the ALJ's findings and made generalized statements that have little, if any, bearing on the particular facts in her case.

The Commissioner asserts that it is difficult to discern plaintiff's specific arguments in support of her motion for summary judgment because her motion mainly consists of a compilation of quotations from black letter case law (like the reference to the case law regarding treating physician opinions) with little accompanying analysis or application of that law or to the facts in her case. The Commissioner argues that plaintiff cannot leave it to the Court to sift through the

record for evidence supporting her claims.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-6 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones.").

The Commissioner contends that plaintiff raises similar generic challenges to the ALJ's residual functional capacity finding.  The flaw in these assertions is that plaintiff has not acknowledged how the ALJ's findings accommodate her impairments and limitations.  For example, plaintiff refers to her testimony about her limited ability to sit, stand, and walk.  The ALJ did not ignore her needs. Rather, the Commissioner points out that he ALJ accommodated plaintiff's needs by finding that she needed an option to sit or stand at will.  (Tr. 26).  Plaintiff also points out that she has carpal tunnel syndrome, but does not explain why the ALJ's limitation to sedentary work with only frequent handling, fingering and feeling did not fully accommodate the limitations caused by that impairment.  (Tr. 26).  Finally, while plaintiff asserts that she has problems bending and crouching and has numbness and tingling in both legs, she has not explained why the ALJ's finding, that limit her to no kneeling, crouching, or crawling, failed to address her needs.

Similarly, plaintiff argues that the limitations she faces effectively preclude

her from performing any work.  However, according to the Commissioner, other than this conclusory statement, plaintiff has not explained why she was unable to perform the jobs identified by the vocational expert.  According to the Commissioner, the ALJ effectively accommodated plaintiff's impairments and the limitations caused by those impairments in the hypothetical question that she posed to the vocational expert.  When the ALJ put those factors into a hypothetical question to the vocational expert, and the expert responded to the question by identifying jobs that a person like plaintiff could perform, the ALJ had substantial evidence that supported her decision.  Because plaintiff has not demonstrated how the ALJ erred and has referred to almost no medical evidence of record in support of her arguments, the Commissioner maintains that she has not effectively challenged the ALJ's reliance on the vocational expert's testimony.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et

seq*.). Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled. F. Bloch,

Federal Disability Law and Practice § 1.1 (1984). While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two: If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.

Report and Recommendation
Cross-Motions for Summary Judgment
*Poole-Little v. Comm'r*; Case No. 13-13558

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.     <u>Analysis and Conclusions</u>

The Commissioner correctly points out that plaintiff cannot simply make the bald claims that the ALJ erred, while leaving it to the Court to scour the record to support this claim. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to ... put flesh on its bones.") (citation omitted); *Crocker v. Comm'r of Soc. Sec.*, 2010 WL 882831 at *6 (W.D. Mich. 2010) ("This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.") (citation omitted).  In the view of the undersigned, while plaintiff's argument is quite undeveloped, the Court's review of the record in this case

reveals significant concerns regarding the ALJ's analysis of the treating physician's opinions and evidence along with the lack of any medical opinion on equivalence.  While plaintiff's brief focuses on the hypothetical question, her challenge is really focused on the ALJ's RFC and whether there is substantial medical evidence to support it.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole.  20 C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight."  Soc.Sec.R. 96-2p, 1996 WL 374188, *5 (1996).  The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not

inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378
F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  A physician qualifies as a treating source
if the claimant sees her "with a frequency consistent with accepted medical
practice for the type of treatment and/or evaluation required for [the] medical
condition."  20 C.F.R. § 404.1502.  "Although the ALJ is not bound by a treating
physician's opinion, 'he must set forth the reasons for rejecting the opinion in his
decision.'"  *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation
omitted).  "Claimants are entitled to receive good reasons for the weight accorded
their treating sources independent of their substantive right to receive disability
benefits."  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).  "The
opinion of a non-examining physician, on the other hand, 'is entitled to little
weight if it is contrary to the opinion of the claimant's treating physician.'"
*Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003).  Courts have
remanded the Commissioner's decisions when they have failed to articulate "good
reasons" for not crediting the opinion of a treating source, as § 1527(d)(2)
requires.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2000), citing
*Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to
remand when the Commissioner has not provided 'good reasons' for the weight
given to a treating physician's opinion and we will continue remanding when we
encounter opinions from ALJ's that do not comprehensively set forth the reasons

for the weight assigned to a treating physician's opinion.").

The ALJ's analysis of plaintiff's long-time treating physician's opinion offered by Dr. Awerbuch, a neurologist, is as follows:

> The opinion of Dr. Awerbuch was considered in formulating the residual functional capacity, which includes limitations to sedentary jobs that permit sitting and standing at will. However, other restrictions listed by Dr. Awerbuch have not been given full weight, because they are not supported by the clinical findings, the treatment history, and the activities of daily living reported. The claimant had shoulder surgery in May 2009 and the surgeon identified the residual restrictions in Exhibit 1F/35. There have been no surgeries since, and no hospitalizations. The claimant had physical therapy until December 2009, with no additional therapy reported. The claimant reported adverse medication side effects, but these are not noted by the treating sources (see, e.g., Exhibits 3F and 4F).

(Dkt. 6-2, Pg ID 54).  Not only is the ALJ's analysis of plaintiff's long-term treating physician sparse and incomplete, the ALJ relies on inaccurate information. The ALJ correctly noted elsewhere in her opinion that plaintiff had physical therapy until March 2010.  (Dkt. 6-2, Pg ID 51).  The ALJ also points to the restrictions imposed by plaintiff's surgeon, Dr. Cirullo, on February 23, 2010, which provide that plaintiff had the following restrictions: no pushing, pulling, or lifting greater than two pounds, no overhead activity, no work above shoulder level, no power, impact, vibrating or torquing tools.  (Dkt. 6-7, Pg ID 252). Notably, however, the ALJ also apparently rejected Dr. Cirullo's opinions

(without discussion) in formulating the RFC, in which the ALJ concluded that plaintiff was able to lift, carry, push and pull a maximum of two pounds frequently *and 10 pounds occasionally*.  It is also significant that the last treating note from Dr. Cirullo is from March 2010, but Dr. Awerbuch was treating plaintiff well into 2012, nearly two years after Dr. Cirullo's opinion was offered.[2]

Moreover, if the ALJ determined that plaintiff's treating physician's opinion should not be given controlling weight despite the medical evidence in support, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician."  *Blakley v. Comm'r of Soc. Sec.*, 582 F.3d 399, 406 (6th Cir. 2009).  This was not done either; rather, the ALJ gave the opinion "limited weight" without a discussion of these factors.  And, even if Dr. Awerbuch's opinion was not entitled to controlling weight, it was still entitled to deference.  20 C.F.R. § 404.1527(d)(2)(i).  As explained in SSR 96-2p:

> Adjudicators must remember that a finding that a treating
> source medical opinion is not well-supported by
> medically acceptable clinical and laboratory diagnostic

---

[2]  The undersigned is also not particularly persuaded by the ALJ or the Commissioner's reliance on Dr. Cirullo's opinion that plaintiff was able to do "paperwork/chartwork," since the RFC as formulated by the ALJ goes far beyond this ability.  (Dkt. 6-7, Pg ID 243).

> techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

The ALJ failed to adequately address why Dr. Awerbuch's opinions should not be given controlling weight or even deference, as required by the regulations. 20 C.F.R. § 404.1527(d)(2). Thus, the undersigned concludes that a remand is necessary so the ALJ may re-evaluate the treating physician opinion and all supporting treatment evidence.

This case is also complicated by the fact that the ALJ did not rely on any other medical opinions to determine equivalence. The single-decision maker (SDM) model was used pursuant to 20 C.F.R. § 404.906(b)(2).[3] This regulation provides streamlined procedures as an experiment, in which State Agency

---

[3] The Court raises this issue *sua sponte*, given the serious nature of the error and the pattern of repetition of this same error since the implementation of the single decision-maker model in Michigan and given that this matter will have to be remanded, in any event, for further consideration of the treating physician opinion evidence. Notably, in Social Security cases, the failure to submit a particular legal argument is "not a prerequisite to the Court's reaching a decision on the merits" or a finding, *sua sponte*, that grounds exist for reversal. *Reed v. Comm'r of Soc. Sec.*, 2012 WL 6763912, at *5 (E.D. Mich. 2012), citing *Wright v. Comm'r of Soc. Sec.*, 2010 WL 5420990, at *1-3 (E.D. Mich. 2010), *adopted by* 2013 WL 53855 (E.D. Mich. 2013); *see also Buhl v. Comm'r of Soc. Sec.*, 2013 WL 878772, at *7 n. 5 (E.D. Mich. 2013) (plaintiff's failure to raise argument did not prevent the Court from identifying error based on its own review of the record and ruling accordingly), *adopted by* 2013 WL 878918 (E.D. Mich. 2013).

disability examiners may decide cases without documenting medical opinions from State Agency medical consultants. The "single decisionmaker model" was an experimental modification of the disability determination process that happens to have been used in Michigan. *See Leverette v. Comm'r*, 2011 WL 4062380 (E.D. Mich. 2011). This experiment eliminated the reconsideration level of review and allowed claims to go straight from initial denial to ALJ hearing. *Id*. Most significantly, it allowed the state agency employee (the single decisionmaker) to render the initial denial of benefits without documenting medical opinions from the state agency medical consultants. *Id*., citing 20 C.F.R. §§ 404.906(b)(2), 416.1406(b)(2). The Programs Operations Manual System (POMS) requires it to "be clear to the appeal-level adjudicator when the SSA-4734-BK [the PRFC assessment form] was completed by an SDM because SDM-completed forms are not opinion evidence at the appeal levels." POMS DI § 24510.05. Plaintiff's physical impairments were evaluated by an SDM, Lawrence Healey. (Dkt. 6-3, Pg ID 88). Thus, no medical opinion was obtained at this level of review, in accordance with this model.

While the ALJ did not rely on the opinion of the SDM, which would have been wholly improper, the lack of any medical opinion on the issue of equivalence is still an error requiring remand. As set forth in *Stratton v. Astrue*, — F.Supp.2d —; 2012 WL 1852084, *11-12 (D. N.H. 2012), SSR 96-6p describes the process

by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for
> deciding the ultimate legal question whether a listing is
> met or equaled. As trier of the facts, an administrative
> law judge ... is not bound by a finding by a State agency
> medical or psychological consultant or other program
> physician or psychologist as to whether an individual's
> impairment(s) is equivalent in severity to any impairment
> in the Listing of Impairments. However, *longstanding
> policy requires that the judgment of a physician* (or
> psychologist) designated by the Commissioner *on the
> issue of equivalence on the evidence* before the
> administrative law judge ... *must be received into the
> record as expert opinion evidence and given appropriate
> weight.*

1996 WL 374180, at *3 (emphasis added); *Barnett v. Barnhart*, 381 F.3d 664, 670

(7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical

judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20

C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir.

1995) ("Generally, the opinion of a medical expert is required before a

determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b));

*Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. 2011) (warning that an

ALJ who makes a step-three equivalence determination without expert-opinion

evidence runs the risk of impermissibly playing doctor).

The *Stratton* court further explains that SSR 96-6p treats equivalence

determinations differently from determinations as to whether an impairment meets

a listing, requiring expert evidence for the former, but not the latter. *Id.* at. *12;

citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. 2008) ("The basic

principle behind SSR 96-6p is that while an ALJ is capable of reviewing records

to determine whether a claimant's ailments meet the Listings, expert assistance is

crucial to an ALJ's determination of whether a claimant's ailments are equivalent

to the Listings.") (citation and quotation marks omitted).  This expert opinion

requirement can be satisfied by a signature on the Disability Determination

Transmittal Form.  *Stratton*, at *12, citing SSR 96-6p, 1996 WL 374180, at *3

(The expert-opinion evidence required by SSR 96-6p can take many forms,

including "[t]he signature of a State agency medical ... consultant on an SSA-831-

U5 (Disability Determination and Transmittal Form)."); *Field v. Barnhart*, 2006

WL 549305, at *3 (D. Me. 2006) ("The Record contains a Disability

Determination and Transmittal Form signed by Iver C. Nielson, M.D ....

discharging the commissioner's basic duty to obtain medical-expert advice

concerning the Listings question.").  There is no Disability Determination and

Transmittal Form signed by a medical advisor as to plaintiff's physical

impairments in this record.  (Dkt. 6-3, Pg ID 88).

    The great weight of authority[4] holds that a record lacking any medical

---

    [4] In *Stratton*, the court noted that a decision from Maine "stands alone" in determination
that 20 C.F.R. § 404.906(b) "altered the longstanding policy that an ALJ is required to seek a
medical opinion on the issue of equivalence." *Id.*, citing *Goupil v. Barnhart*, 2003 WL 22466164,

advisor opinion on equivalency requires a remand. *Stratton*, at *13 (collecting cases); *see e.g. Caine v. Astrue*, 2010 WL 2102826, at *8 (W.D. Wash. 2010) (directing ALJ to obtain expert-opinion evidence on equivalence where none was in the record); *Wadsworth v. Astrue*, WL 2857326, at *7 (S.D. Ind. 2008) (holding that where record included no expert-opinion evidence on equivalence, "[t]he ALJ erred in not seeking the opinion of a medical advisor as to whether Mr. Wadsworth's impairments equaled a listing").

While the government has argued in other cases that courts in this district have concluded that the ALJ need not obtain expert opinion evidence in cases involving an SDM, *see Gallagher v. Comm'r*, 2011 WL 3841632 (E.D. Mich. 2011) and *Timm v. Comm'r*, 2011 WL 846059 (E.D. Mich. 2011), the undersigned does not find these cases persuasive. In both cases, the court concluded that because the regulations permitted an SDM to make disability determination without a medical consultant that the ALJ is, therefore, also permitted to do so where the "single decisionmaker" model is in use. Nothing about the SDM model changes the ALJ's obligations in the equivalency analysis. *See Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*,

---

at *2 n. 3 (D. Me. 2003).

1995 WL 697215, at *2 (6th Cir. 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)).

Based on the foregoing, the undersigned cannot conclude that the ALJ's obligation to consult a medical expert in making an equivalency determination is any different in a case where the SDM model is used.  While the SDM is not required to obtain a medical opinion in cases involving physical impairment, as noted in *Timm* and *Gallagher*, nothing appears to have modified the ALJ's obligations and it makes little sense to conclude that the ALJ is relieved from obtaining an expert medical opinion in SDM cases.  Thus, the undersigned's analysis does not alter the SDM model, which leaves the SDM discretion as to whether a medical expert is consulted as to physical impairments.  Rather, the undersigned's analysis leaves intact the requirements imposed on an ALJ in making an equivalency determination, which do not otherwise appear to be modified by the SDM model.  *See also*, *Maynard v. Comm'r*, 2012 WL 5471150 (E.D. Mich. 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence."); *Harris v. Comm'r*, 2013 WL 1192301, *8 (E.D. Mich. 2013) (A medical opinion on the issue of equivalence is required, regardless of whether the SDM model is implicated.).  In this case, while a consulting examiner was utilized, Dr. Ray offered no opinions

on the issue of equivalence.  (Dkt. 6-7, Pg ID 351-354); *see e.g.*, *Caine v. Astrue*, 2010 WL 2102826, *8 (W.D. Wash. 2010) (Where the state agency consultant offered no findings on equivalence, the ALJ should obtain an updated medical expert opinion in order to meet her obligation to fully and fairly develop the administrative record.).

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** under sentence four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: June 23, 2014                         s/Michael Hluchaniuk
                                            Michael Hluchaniuk
                                            United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on June 23, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Richard J. Doud, John L. Martin.

                                            s/Tammy Hallwood
                                            Case Manager
                                            (810) 341-7887
                                            tammy_hallwood@mied.uscourts.gov